**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,

Case No. 3:19-md-2885

Judge M. Casey Rodgers
Magistrate Judge Gary R. Jones

This Document Relates to:

*Steven Wilkerson*
Case No. 7:20-cv-00035

_____/

**ORDER**

Pending before the Court is Defendants' Expedited Motion to Compel Plaintiff Steven Wilkerson to Undergo Genetic Testing for Hearing Loss. ECF No. 23. Plaintiff opposes the motion. ECF No. 25.  The motion is otherwise ripe for consideration.   For the reasons discussed below, Defendants' motion is due to be denied.

**I.  INTRODUCTION**

Plaintiff is among the Trial Group D Bellwether Plaintiffs in this multidistrict litigation, a collection of products liability actions concerned with whether Defendants were negligent in their design, testing, and labeling of the nonlinear dual-ended Combat Arms Earplug Version 2 (the "CAEv2").  Plaintiffs are servicemembers, veterans, and civilians seeking

damages in this action for hearing loss, tinnitus, and related injuries caused by their use of the CAEv2.  Master Docket ECF No. 704.

In his deposition taken on October 1, 2021, Plaintiff Wilkerson testified that he has a family history of hearing loss. Steven Wilkerson Deposition, ECF No. 23-1 at 42 ¶¶1-23 (SEALED).  Specifically, Plaintiff testified that his cousin and one of his cousins-once-removed were born deaf. ECF No. 23-1 at42 ¶¶1-23 (SEALED).

Defendants contend that they are entitled to examine Plaintiff's genetic make-up as to hearing loss for three reasons.  First, Defendants say that hearing loss can be attributed to a number of causes, one of which is genetics. Second, Defendants point to Plaintiff's audiograms, which they say, demonstrate that Plaintiff has low-frequency hearing loss, a condition not often attributable to noise exposure.[1]  Third, pointing to Plaintiff's cousin and the son of one of Plaintiff's cousins, who were born deaf, Defendants argue that Plaintiff's family history of hearing loss coupled with his own hearing loss may suggest an inherited condition.

Relying upon Rule 35 of the Federal Rules of Civil Procedure, Defendants want the Court to order Plaintiff to undergo the OtoSCOPE

---

[1] Plaintiff's audiograms were provided to Defendants nearly one year ago on December 16, 2020.  ECF No. 25 at 6.

2

Genetic Hearing Loss Test, which is narrowly tailored to analyze only a fraction of the genes associated with hearing loss.[2]  Defendants propose that the test would be conducted by Dr. Nathaniel H. Robin, M.D., a genetic testing specialist, at the University of Alabama at Birmingham's Medical Center.  The Medical Center is a three-and-a-half-hour drive from Plaintiff's home.  Notably, the results of the OtoSCOPE Genetic Hearing Loss Test, generally take six weeks to receive so if testing was ordered the current deadline for expert disclosures, December 3, 2021, would be adversely affected.  See ECF No. 23 at 3 n.1.

## II.  DISCUSSION

While Defendants' motion in an appropriate case with a documented immediate family history of hearing loss at birth involving, for example, parents, grandparents or siblings, might have some traction, here, Defendants instead rely upon a distant relative with a different hearing related condition as the predicate for the genetic testing of Plaintiff.  But even if having a distant relative with hearing loss at birth was enough, (which it is not) Defendants' motion is untimely and if granted would upset and derail the deadlines in this case.

---

[2] The OtoSCOPE test would not analyze Plaintiff's entire genome.

3

Turning first to the timeliness of Defendants' motion, while the motion was filed one week before the fact discovery deadline, Defendants waited far too long to bring the motion. As a practical matter if the Court granted Defendants' motion on the day Plaintiff's expedited response was due the genetic testing at Birmingham's Medical Center would take place well after the November 19, 2021 discovery deadline. The Court was very clear when setting the deadlines in the bellwether cases that Rule 35 medical examinations for the bellwether Plaintiffs in Trial Groups C and D must occur prior to the fact discovery deadline. ECF No. 1550, at p. 8. Plaintiff's deposition was taken on October 1, 2021, more than one and a half months before Defendants filed the motion. But even if there were legitimate reasons for the delay in filing the motion, allowing Defendants to conduct the genetic testing well after the discovery deadline would seriously impact the court-ordered deadlines for preparing and serving expert reports and possibly result in further delays by the parties in supplementing expert reports to address the genetic testing. The timeline for the genetic testing highlights the adverse impact genetic testing would have on the schedule in this case.

Even assuming that an appointment could be scheduled for Plaintiff to travel to Birmingham, Alabama for the testing after the Thanksgiving

holiday in early December Defendants advise that the results of the genetic hearing test generally take six weeks to receive. Thus, even under an ambitious schedule the parties would not have the results of the genetic testing until at least the second week in January 2022. Plaintiff's expert disclosures are due on December 3, 2021, meaning that Plaintiff would be forced to serve expert reports without any information on the results of the genetic testing. Importantly, depending upon the results of the test Plaintiff would potentially need to redo and/or supplement his expert reports and possibly need to retain his own expert on genetic testing, all of which would adversely impact the trial schedule in this case.

Additionally, depending upon the results of the genetic testing, there is a strong likelihood that Plaintiff would lodge a *Daubert* challenge to the use of genetic testing in a case, like here, where the family history of hearing loss relates to distant relatives and not immediate family members.

The requirement that Rule 35 examinations should take place within the discovery deadline assures that like any other discovery tool it may be used to develop evidence that an expert would use in forming her opinion. Thus, authorizing Rule 35 examinations to take place after the close of fact discovery deadlines raises a risk of further delays because of "the likelihood od additional discovery disputes, expert designations, expert

5

depositions, and disclosures in the parties' expert reports." *Garayoa v. Miami-Dade Cty.*, No. 16-CIV-20213, 2017 WL 2880094, at *5 (S.D. Fla. July 5, 2017).

One of the reasons Defendants argue they should be entitled to subject Plaintiff to genetic testing rests upon Plaintiff's audiograms, which Defendants say show low frequency hearing loss, a condition that is not attributable to noise exposure. Whether low frequency hearing loss is or is not caused by noise exposure, the audiograms upon which Defendants now rely were provided to Defendants in December 2020, more than eleven months ago. This would have afforded Defendants with more than sufficient time to explore this issue and, if necessary, to bring it to the attention of the Court. Instead, Defendants waited until the final week of discovery knowing that genetic testing would involve at least six weeks for results to be obtained. Thus, because of the lateness of Defendants' request and the substantial impact genetic testing would surely have on the expert disclosure deadlines, supplementation of expert reports and possibly the necessity for retention of other experts regarding genetic testing, Plaintiff's Rule 35 motion is due to be denied.

Separate from the problems with the timeliness of Defendants' motion Defendants have not established good cause for the examination at this late stage of the case.

In *Schlagenhauf v. Holder,* 379 U.S. 104, 118, 85 S.Ct. 234, 242, 13 L.Ed.2d 152 (1964), the Supreme Court held that the "good cause" and "in controversy" requirements of Rule 35 require a showing greater than mere relevance, or conclusory allegations of the parties. Rule 35 requires an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering *each particular examination*. 379 U.S. at 118, 85 S.Ct. at 242-43 (emphasis added). The ability of the movant to obtain the information by other means is also relevant. *Id*. The Court further noted that Rule 35 examinations should not be "ordered routinely" and that "there must be a greater showing of need under [Rule 35] than under the other discovery rules." *Id.* at 118, 122.

Although there is no question that Plaintiff's hearing loss is "in controversy" in this case, Defendants fail to establish good cause for ordering additional medical testing and in particular *genetic testing* for hearing loss at this late date. Defendants already have conducted extensive examinations of Plaintiff on his hearing loss and his family history

7

of hearing loss. Plaintiff already has undergone a four-hour medical examination consisting of thirteen different examinations. The Rule 35 medical examination in this case and the types of tests that were conducted were not random but rather were part of a general IME protocol negotiated by the parties for the Group A cases (PTO 56) and which the parties as a matter of practice have been applying to Groups B. C and D cases. This is consistent with the Court's expectations that the parties will utilize the agreed-upon IME protocol for the Group B, C and D bellwether cases. ECF No. 1550, p. 2, n. 1. Notably, the protocol negotiated in the Group A cases—and which the parties have been applying to the Group B, C and D cases—lists 15 specific hearing tests to which Plaintiffs agreed to submit. ECF No. 1477, Ex. A. The parties agreed that the Rule 35 examinations will include all of some of the tests with the examination time limited to four hours. Conspicuously absent from the list of agreed-upon tests is genetic testing. Certainly, if Defendants believed genetic hearing testing might be a valid and reliable test in some cases Defendants would have at least attempted to include it and if there was a serious dispute regarding the applicability of genetic testing in cases involving hearing loss the issue could have been fleshed out a long time ago between the parties and, if necessary, with the Court. That never happened.

Moreover, although Defendants submit a cursory declaration from Derek Jones, M.D. in support of their motion Dr. Jones never explains the basis of his conclusion that genetic testing is warranted because Plaintiff presents with a strong family history of deafness. To be sure the family history upon which Defendants rely, and presumably upon which Dr. Jones references, consists of a cousin and the son of one of Defendants' cousins. The Defendants do not explain nor does Dr. Jones elaborate upon the scientific link or basis for connecting deafness in cousins with the Plaintiff. This shortcoming is important because under Rule 35 "there must be a greater showing of need than under the other discovery rules." *Schlagenhauf*, at 118, 122.  The Court therefore is not satisfied that Defendants have met their burden of showing that additional testing outside of the protocol utilized in the other MDL bellwether cases is necessary or that Defendants have established beyond mere conclusions that Plaintiff should be subjected to genetic testing.

Lastly, the cases offered by Defendants do not change the result. While Defendants' cases involve circumstances where other courts have permitted genetic testing, none of the cases are product liability cases, but rather are medical malpractice cases. In *Burt v. Winona Health*, No. 16-1085 (DWF/FLN), 2018 WL 3647230 (D. Minn. Aug. 1, 2018), a medical

9

negligence case, the Court permitted genetic testing because the defendant had identified specific facts relating to the plaintiff's parents, which indicated the possibility of underlying genetic issues within the family. Here, Defendants rely upon the naked assertion that Plaintiff's cousin and his son were born deaf. There is no discussion by Defendants or by Dr. Jones of the cause or type of hearing loss experienced by Plaintiff's cousin or how this type of familial relationship would be genetically linked to hearing loss in a distant family member like Plaintiff.

Defendants' reliance upon *Bennett ex rel. Bennett v Fieser,* 1994 WL 542089 (D. Kan. Feb. 25, 1994) fares not much better. In *Bennett*—another medical malpractice case—the Court there authorized genetic testing but only after the requesting party had established to the Court's satisfaction that the testing met the *Daubert* standard. Here, Dr. Jones' brief declaration offers nothing remotely close to or supportive of scientific information that would demonstrate that genetic testing of a party because of conditions of a distant cousin are supported in the scientific peer reviewed literature. In the absence of such a showing, authorizing the genetic testing of the Plaintiff not only will impact the expert deadlines in this case but without more of a showing could result in generating discovery into an area that on this record is speculative at best. In the absence of a competent showing

based upon expert testimony demonstrating that there is a reliable scientific basis for the genetic testing, as opposed to a conclusory declaration, the Court concludes that Defendants have not made a sufficient showing of good cause to support their request that Plaintiff undergo OtoSCOPE Genetic Hearing Loss Testing

Accordingly, for these reasons, it is **ORDERED:**

Defendants' Expedited Motion to Compel Plaintiff Steven Wilkerson to Undergo Genetic Testing for Hearing Loss, ECF No. 23, is **DENIED**.

**DONE AND ORDERED** this 24th day of November 2021.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge