## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,

Case No. 3:19-md-2885

Judge M. Casey Rodgers
Magistrate Judge Gary R. Jones

This Document Relates to:

*Beal,* 7:20-cv-00006
*Kelley,* 7:20-cv-00153
*Vaughn*, 7:20-cv-00134
*Vilsmeyer,* 7:20-cv-00113
*Wilkerson,* 7:20-cv-00035
_____/

## **ORDER**

Pending before the Court are Plaintiffs' Motions to Authorize Remote

Testimony Pursuant to Rule 43(a) From Elliott Berger. Master Docket ECF

No. 2679.[1]  Defendants have filed responses to the motions in each of the

cases.[2] Although Elliott Berger—a non-party witness—filed in each of the

cases a response in the form of an opposition to Plaintiffs' motions and a

_____

[1] Plaintiffs filed their Motion to Authorized Remote Testimony in each of the individual cases identified above. The respective docket entries are as follows: *Beal,* case no. 7:20-cv-00006, ECF No. 44; *Kelley,* case no. 7:20-cv-00153, ECF No. 33; *Vaughn,* case no. 7:20-cv-00134, ECF No. 36; *Vilsmeyer,* case no. 7:20-cv-00113, ECF No. 33; *Wilkerson,* case no. 7:20-cv-00035, ECF No. 50.

[2] *Beal,* case no. 7:20-cv-00006, ECF No. 56; *Kelley,* case no. 7:20-cv-00153, ECF No. 40; *Vaughn*, case no. 7:20-cv-00134, ECF No. 48; *Vilsmeyer,* case no. 7:20-cv-00113, ECF No. 59; *Wilkerson,* case no. 7:20-cv-00035, ECF No. 79.

motion for protective order, Mr. Berger is not a party in these cases.[3]
Because Mr. Berger is not a party in any of these cases and has filed a
miscellaneous action in which he advances his motion for protective order,
*see,* case no. 3:22-mc-8-MCR-GRJ, to the extent that Mr. Berger's filings in
the above referenced cases are considered motions for protective order the
motions are denied.

For the reasons explained below, Plaintiffs' Motions to Authorize
Remote Testimony Pursuant to Rule 43(a) from Elliott Berger are due to be
granted. Plaintiffs will be permitted to subpoena Elliott Berger for remote
live testimony in these five group D bellwether cases.

## I. BACKGROUND

The five (5) bellwether trials in Group D are scheduled to take place
between March and May 2022. For each of these trials Plaintiffs request
authorization under Rule 43(a) of the Federal Rules of Civil procedure to
obtain the testimony of Elliott Berger—a former 3M employee and current
paid consultant—in open court by contemporaneous transmission from a
location outside this district.

---

[3] *Beal,* case no. 7:20-cv-00006, ECF No. 59; *Kelley,* case no. 7:20-cv-00153, ECF No. 49; *Vaughn,* case no. 7:20-cv-00134, ECF No. 51; *Vilsmeyer,* case no. 7:20-cv-00113, ECF No. 65; *Wilkerson,* case no. 7:20-cv-00035, ECF No. 82.

This is not the first time the Court has been called upon to address this identical issue. In *Baker v. 3M,* case no. 7:20-cv-39-MCR-GRJ the Court there found that there were compelling circumstances under Rule 43(a) to permit the live remote transmission of Mr. Berger's testimony at trial. *Baker,* ECF No. 133. Similarly, on October 28, 2021, the Court granted an identical motion filed on behalf of eight bellwether plaintiffs, authorizing each of the eight bellwether plaintiffs to subpoena Mr. Berger to testify remotely by contemporaneous transmission. MDL ECF No. 2247. There, the Court concluded that compelling circumstances existed to permit remote testimony of Mr. Berger at the bellwether trials.

In the present case, Plaintiffs advance similar arguments previously presented to the Court in support of their request. Although Defendants recognize that the Court already has addressed this issue, they say the circumstances are now different because Mr. Berger has now testified at ten trials and, therefore, the Court should not permit Plaintiffs to subpoena Mr. Berger to testify *ad infinitum*. Alternatively, Defendants request that if the Court grants the motion the Court's ruling should apply equally to both parties so that Defendants will also have the right to compel Mr. Berger's live testimony under Rule 43(a).

3

## II.  DISCUSSION

A witness's testimony at trial must be taken in open court unless a federal rule or statute allows otherwise.  Fed. R. Civ. P. 43(a).  When a party presents "good cause in compelling circumstances" and assures the Court of "appropriate safeguards," the Court "may permit testimony in open court by contemporaneous transmission from a different location."  Fed. R. Civ. P. 43(a).

An overwhelming consensus of federal courts, including MDL courts, have held that Rules 43(a) and 45 should be read in tandem. See, e.g., *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592, 2017 WL 2311719, at *4 (E.D. La. May 25, 2017) (holding the MDL Plaintiffs' subpoena compelling a witness to testify by contemporaneous transmission "within 50 miles from his home and place of business" is "within the bounds of" Rule 45(c)); *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, No. 3:11-md-2244-K, 2016 WL 9776572, at **1–2 (N.D. Tex. Sept. 20, 2016) (granting leave of court for the MDL Plaintiffs to "present testimony via contemporaneous video transmission for certain witnesses under Defendants' control that are unavailable to testify in the Northern District of Texas"); *In re Actos (Pioglitazone) Prods. Liab. Litig.*, No. 6:11-md-2299, 2014 WL 107153, at *9 (W.D. La. Jan. 8, 2014) ("[T]he two Rules

embrace and address the concept of appearance at 'trial' to include contemporaneous live transmission from another location at the location of the Court.").

Thus, as the Court previously found, a party may use a Rule 45 subpoena to compel remote testimony by a witness from anywhere so long as the place of compliance (where the testimony will be given by the witness and not where the trial will take place) is within the geographic limitations of Rule 45(c). This is because "the 100-mile limitation now found in Rule 45(c) has to do with the place of compliance; not the location of the court from which the subpoena issued." *Int'l Seaway Trading Corp. v. Target Corp.,* No. 0:20-mc-86-NEB-KMM, 2021 WL 672990, at *5 (D. Minn. Feb. 22, 2021) (emphasis in original); see also *In re Newbrook Shipping Corp.*, 498 F. Supp. 3d 807, 815 (D. Md. 2020) ("Given the modification of the deposition notice to provide for a remote deposition over Zoom or other teleconferencing platform, the deposition notice no longer requires GMS or Sharma to travel more than 100 miles (or at all) to comply, so the Court declines to address GMS' argument that the subpoena compels GMS to comply outside of the geographical bounds of Rule 45(c).").

Turning to Plaintiffs' current motion, the Court now has the benefit of observing Mr. Berger's testimony by remote transmission in ten bellwether

trials. As the Court previously recognized Mr. Berger is a key witness in these bellwether cases. Indeed, for good reason Defendants do not challenge Plaintiffs' assertion that Mr. Berger is an important witness. Mr. Berger drafted the Flange report, invented the CAEv2 and has been one of the key witnesses defending the CAEv2.

In addition to the importance of Mr. Berger's testimony in these upcoming bellwether cases, during the previous ten bellwether trials Mr. Berger's testimony has evolved. Because the issues have been and continue to be finely tuned as the bellwether cases proceed the importance of Mr. Berger's testimony is heightened, thus, making some of the questioning of Mr. Berger during his videotaped depositions stale and in some instances out of cinq with his trial testimony.

Defendants say simply because Mr. Berger's testimony has evolved is no reason to authorize his live testimony by contemporaneous transmission because to do so essentially is giving the Plaintiffs additional bites at the apple. But that is not a compelling reason to deny Plaintiffs' request. Certainly, whenever a witness provides live testimony at trial after having provided deposition testimony during discovery, a party is given another opportunity to examine the witness and in that sense the party gets another bite at the apple.

But the key inquiry is not whether granting the motion will provide

Plaintiffs with another opportunity to question Mr. Berger.  Rather, the key

inquiry is whether there are compelling circumstances to permit Mr. Berger

to provide live testimony via remote means. There continue to be

compelling circumstances for several reasons.

First, as the Court observed previously "[T]here is little doubt that live

testimony by contemporaneous transmission offers the jury better quality

evidence than a videotaped deposition." MDL ECF No. 2247, at n. 3. And,

importantly, live testimony via video also produces higher levels of jury

engagement than does pre-recorded deposition testimony. *Mullins v*

*Ethicon,* 2017 WL 532102, at *2 (S.D. W. Va. Feb. 8, 2017).

Second, in addition to the importance of live testimony at trial, the

upcoming trials are bellwether trials thus making a jury verdict based upon

live testimony more meaningful for the litigants to evaluate the strengths

and weaknesses of their cases. A full evaluation of the cases by the parties

is the goal of bellwether trials so that the parties are more fully informed

about their strategies going forward for resolving the cases in the MDL.

Thus, in the Court's view, the importance of presenting live testimony,

through remote transmission, takes on added importance because the trials

are bellwether trials. The Court does not stand alone in this view. Other

MDL courts, including Judge Fallon in *In re Vioxx,* has observed that "[T]he Manuel for Complex Litigation recognizes the permissibility and value of contemporaneous transmission through the use of videoconferencing." *In re Vioxx,* 439 F. Supp. At 642-43 (citing Manuel for Complex Litigation (Fourth) § 12.334 (2004)).

In addition to these reasons, the Court finds instructive, as it did previously, the five-factor test used in *In re Vioxx Prod. Liab. Litig,,* 439 F. Supp. 2d 640, 643 (E.D. La. 2006). Those factors include:

> (1) the control exerted over the witness by the defendant; (2) the complex, multi-party, multi-state nature of the litigation; (3) the apparent tactical advantage, as opposed to any real inconvenience to the witness, that the defendant is seeking by not producing the witness voluntarily; (4) the lack of any true prejudice to the defendant; and (5) the flexibility needed to manage a complex multi-district litigation.

*In re Vioxx* 439 F. Supp. 2d at 643.

As to control over the witness, although Defendants say they have no control over Mr. Berger at this juncture, Berger continues to cooperate with Defendants in preparing his trial testimony and coordinating how and when he will testify. As the Court previously observed after a recent evidentiary hearing Berger continues to have an ongoing consulting agreement with 3M's counsel despite the fact Berger terminated his consulting agreement with 3M in early October 2021. Additionally, Mr. Berger has been paid

approximately $600,000 thus far for consulting with 3M's counsel, including the preparation of his trial testimony. And, at least in some of the past bellwether trials Mr. Berger has voluntarily appeared in Defendants' case in chief without the need for a subpoena. While there may be room for some debate whether Mr. Berger has separated himself from 3M, the fact remains he was employed for decades with the Defendants and even after his retirement has cooperated extensively with 3M and provided deposition and trial testimony on many occasions. This underscores that Mr. Berger is not simply a disinterested witness but rather is a witness over whom 3M has in the past exerted a significant amount of control.

The second and fifth *Vioxx* factors are particularly relevant here. As the Court observed in *Baker* in granting Plaintiff's request for the remote testimony of Mr. Berger, "[t]hese bellwether trials are complex—the complexity of these cases mirrors the undisputed fact that this is the largest MDL in American history." *Baker*, ECF No. ECF No. 133, at 14. Because of the multi-party and multi-state nature of the litigation it is simply not practical to expect that witnesses like Berger are going to be located in the forums where these cases are litigated.

The third and fourth *Vioxx* factors point decidedly in favor of authorizing remote testimony from Berger. In the Court's view there is a significant

tactical advantage if the Court denied Plaintiffs' request. Defendants resist Plaintiffs' attempt to present the live testimony of Mr. Berger so that Berger will not be further subjected to the crucible of cross-examination by Plaintiffs. Instead, Defendants want to limit the presentation of Berger's testimony to sanitized and brief snippets of videotape deposition testimony. Proceeding in that fashion will deprive the Plaintiffs from testing the credibility of Mr. Berger's testimony on critical issues involving the testing Defendants performed on the CAEv2, the development of the CAEv2 and the level of disclosures about the product to the military.

But in addition to depriving Plaintiffs of the opportunity to test the credibility of Berger's testimony on these issues the jury will be deprived of the opportunity of observing and deciding for themselves as fact finders the credibility of the testimony of Mr. Berger. In short, the continuing dispute about whether to present Berger's testimony live through remote transmission or through sterile videotaped deposition testimony is all about tactics and strategies. This *Vioxx* factor, therefore, strongly favors granting Plaintiffs' motion.

As to prejudice to the Defendants, Defendants complain that compelling Berger to be available to provide live testimony would greatly prejudice Defendants and Mr. Berger because Defendants would be

required to coordinate with Mr. Berger to prepare him for five trials over a three-month condensed time frame.  Admittedly, although Defendants will spend some time preparing Mr. Berger's testimony, Defendants claims of prejudice ignore that they already have spent hundreds of hours preparing his testimony in the prior bellwether trials. While some time may be required refreshing Mr. Berger's trial preparation the Court assumes that significantly less time would be necessary since Defendants have done this in ten prior bellwether trials.

As to prejudice to Mr. Berger, the Court is fully aware that Mr. Berger is retired and represents that he no longer has the time or commitment to testify in the bellwether cases.  While that may be so Mr. Berger was well aware when he agreed to participate in these case that extensive time testifying would be involved. Mr. Berger has been compensated handsomely for the time involved in preparing his testimony and working with counsel for 3M. Consequently, some inconvenience to Mr. Berger is to be expected and certainly should have been anticipated when he entered into the consulting agreement with 3M's counsel. But inconvenience and prejudice are separate considerations. Indeed, allowing Mr. Berger to testify at a location convenient to him and directing the parties to coordinate with Mr. Berger's schedule for the dates and times he will testify reduces

11

much of the inconvenience and lessens the chances that Mr. Berger would be prejudiced if the parties are permitted to present his testimony remotely.

There also is another compelling reason relevant to prejudice that tips the scales in favor of granting Plaintiffs' motion.  So far in every bellwether trial Defendants have not presented one live witness, who is an employee, officer or representative for 3M. Although the Court has no way of predicting whether 3M will continue to pursue this strategy in the remaining five bellwether trials, assuming they do, the jury will have the benefit of each of the Plaintiffs, and possibly family members, testifying live subject to broad and probing cross-examination by 3M. In the absence of Mr. Berger's live remote testimony Plaintiffs will have no opportunity to subject any 3M employees, past or present, to probing cross-examination in the presence of the jury. In the Court's view this could prejudice the Plaintiffs' ability to fully present their case on critical issues and would deprive the jury of the opportunity to assess for itself the competing credibility of the witnesses for both sides.

And contrary to 3M and Berger's protestations, the Court's authorization in this order will not impose on Berger the burden of having to continue to testify *ad infinitum*. Rather, the Court's authorization in this order extends only to the remaining five bellwether cases and does not

12

extend to the cases that are included in the Court's wave orders. Obviously, Mr. Berger is not going to testify live in the next fifteen hundred trials. The parties will be required at some point in the future to reach agreement and accommodation on how the testimony of the parties' various witnesses, including Mr. Berger, will be presented in those future trials.  But for now, in the remaining bellwether trials there is a heightened importance to the presentation of live testimony so that the verdicts of the juries in these remaining cases will truly be a "bellwether" for the parties to use in charting a course of action to address the more than 200,000 cases in this MDL.

For all these reasons, the Court concludes that Plaintiffs have presented compelling reasons to grant their motion. Plaintiffs are, therefore, authorized to subpoena Mr. Berger under Rule 43(a) and Rule 45 to obtain his testimony by contemporaneous transmission in the remaining five bellwether trials. The Court's authorization is subject to the safeguards and conditions included in this order.

That leaves for resolution Defendants' alternative request that the Court authorize Defendants under Rule 43(a) to subpoena Berger to obtain his remote testimony. According to Defendants, the factors the Court

considers in making this determination compel symmetrical treatment of both parties.

While the analysis of whether to compel Berger to provide live testimony is not necessarily symmetrical because the level of control and influence 3M has on Berger is much different from the complete lack of control Plaintiffs have over Berger, the Court agrees that the complexity of this case and the importance of providing the jury with live testimony of a critical witness such as Mr. Berger in the bellwether trials applies to both sides. The Court cannot identify any prejudice to the Plaintiffs if Defendants were also granted permission to compel his live testimony. Therefore, the Court concludes that Defendants are also authorized under this order to obtain the remote testimony of Mr. Berger.

Under Rule 43, the court has a duty to impose appropriate safeguards when it allows for remote testimony at trial.  Fed. R. Civ. P. 43(a).  "Appropriate safeguards exist where the opposing party's ability to conduct cross-examination is not impaired, the witness testifies under oath in open court, and the witness's credibility can be assessed adequately." *Warner v. Cate*, No. 1:12-cv-1146-LJO-MSJ (PC), 2015 WL 4645019, at *1 (E.D. Cal. Aug. 4, 2015).

As has been the case in previous bellwether trials Berger will testify via contemporaneous videoconferencing technology (ZoomGov), which is, of itself, an appropriate safeguard.  *See Liu v. State Farm Mut. Auto. Ins. Co.*, No. 2:18-1862-BJR, 2020 WL 8465987, at *2 (W.D. Wash. Dec. 17, 2020) ("[M]odern videoconferencing technology allows for near instantaneous transmission of testimony with no discernable difference between it and 'live' testimony, thereby allowing a juror to judge credibility unimpeded."); *In re RFC and ResCap Liquidating Trust Action*, 444 F. Supp. 3d at 971 ("Given the speed and clarity of modern videoconference technology, where good cause and compelling circumstances are shown, such testimony 'satisfies the goals of live, in-person testimony and avoids the short-comings of deposition testimony.'" (*In re Vioxx*, 439 F. Supp. 2d at 644).

Additionally, to ensure that technological problems do not affect the presentation of Mr. Berger's testimony at trial the Court directs the party issuing the subpoena to Mr. Berger to have the technology vendor present at the site of Berger's remote testimony each time he testifies.  Further, the party issuing the subpoena must supply an attorney at the remote location to manage exhibits were there to be a delay in transmitting the exhibits via ZoomGov.

The Court further directs the parties to establish a schedule for Berger's remote testimony for each of these cases.  Counsel for the parties must coordinate with Mr. Berger and his counsel the dates, times, and locations for his testimony, giving Mr. Berger ample time to prepare and adjust his schedule.  In the event both parties subpoena Mr. Berger, the parties will coordinate which party proceeds first with examination. And regardless of which party proceeds first the entire examination by both parties must take place one after the other until the examination is completed. The parties will not be permitted to each call Mr. Berger in their case in chief, which would require Mr. Berger to testify more than once in each case. The Court determines that requiring Mr. Berger to testify more than once in each case is unnecessary and would create an unfair burden for Mr. Berger.

### III.  CONCLUSION

Accordingly, for the reasons explained above, it is **ORDERED**:

1.  Plaintiffs' Motions to Authorize Remote Testimony Pursuant to Rule 43(a) From Elliott Berger, Master Docket ECF No. 2679, are **GRANTED**.[4]  Plaintiffs in the five remaining bellwether trials

---

[4] This order **GRANTS** the Motions to Authorize Remote Testimony in each of the individual cases: *Beal,* case no. 7:20-cv-00006, ECF No. 44; *Kelley,* case no. 7:20-cv-00153, ECF No. 33; *Vaughn,* case no. 7:20-cv-00134, ECF No. 36; *Vilsmeyer,* case no. 7:20-cv-00113, ECF No. 33; *Wilkerson,* case no. 7:20-cv-00035, ECF No. 50.

may subpoena Berger to testify remotely by contemporaneous transmission.

2.     The Court's ruling on Plaintiffs' motions also applies to Defendants so Defendants also may subpoena Berger to testify remotely by contemporaneous transmission.

3.     The parties must coordinate with Mr. Berger the schedule for Berger's remote testimony at the five remaining bellwether trials. The presentation of Mr. Berger's testimony by either side is subject to the conditions in this order.

**DONE AND ORDERED** this 18th day of February 2022.

*s/Gary R. Jones*

GARY R. JONES