UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *Wilkerson*, 7:20-cv-035 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

# ORDER

This matter is before the Court on Plaintiff Steven Wilkerson's Motions for Summary Judgment on several of Defendants' affirmative defenses under Federal Rule of Civil Procedure 56. ECF Nos. 54 & 96. Having now fully considered the parties' arguments and applicable Wisconsin law, the Court concludes that Wilkerson's motions should be **GRANTED** in part and **DENIED** in part.

Summary judgment is appropriate where there are no genuine disputes of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden of demonstrating the absence of a genuine dispute of material fact rests with the moving party. *Celotex*, 477 U.S. at 323. In determining whether the moving party has carried its burden, a court must view the evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party. *Liberty Lobby*, 477 U.S. at 255; *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997).

The Court assumes the parties' familiarity with the general factual allegations and nature of this multidistrict litigation. Wilkerson has brought fifteen claims against Defendants under Wisconsin law[1] arising from injuries he alleges were caused by his use of the Combat Arms Earplug version 2 ("CAEv2") during his military service. *See* Master Short Form Compl., ECF No. 1.[2] Defendants raise several affirmative defenses, including that Wilkerson's failure to warn claims are barred by various intermediary defenses, that the United States military's actions are a superseding cause of Wilkerson's injuries, that Wilkerson failed to mitigate his damages, that Wilkerson's claims are untimely under the applicable Wisconsin

---

[1] The parties agree Wisconsin law applies to Wilkerson's claims. *See* ECF No. 48.

[2] Specifically, Wilkerson raises claims for Design Defect – Negligence (Count I), Design Defect – Strict Liability (Count II), Failure to Warn – Negligence (Count III), Failure to Warn – Strict Liability (Count IV), Breach of Express Warranty (Count V), Breach of Implied Warranty (Count VI), Negligent Misrepresentation (Count VII), Fraudulent Misrepresentation (Count VIII), Fraudulent Concealment (Count IX), Fraud and Deceit (Count X), Gross Negligence (Count XI), Negligence Per Se (Count XII), Consumer Fraud and/or Unfair Trade (Count XIII), Unjust Enrichment (Count XV), and Punitive Damages (Count XVI). ECF No. 1 at 4.

Statute of Limitations and Statute of Repose, and that Wilkerson assumed the risk of an open and obvious danger. Defendants' Amended Answer, ECF No. 87. Wilkerson has moved for summary judgment on each of these affirmative defenses. ECF Nos. 54 & 96. In response, Defendants have withdrawn their bulk supplier and statute of repose defenses. ECF No. 106 at 1.

## I.     Defendants' Intermediary Defenses

Wilkerson has moved for summary judgment on Defendants' learned intermediary and sophisticated intermediary affirmative defenses, arguing that these defenses do not apply to a manufacturer of a product marketed and sold directly to the general public. ECF No. 54 at 3–6. The Court agrees.

Wisconsin state courts have not adopted the learned intermediary or sophisticated intermediary defenses. *See In re Zimmer, NextGen Knee Implant Prods. Liab. Litig.*, 884 F.3d 746, 750–51 (7th Cir. 2018) (explaining that "neither the Wisconsin Supreme Court nor the state's intermediate appellate courts have addressed" the learned intermediary defense). However, even if these defenses were adopted under Wisconsin law, neither of them would apply. The Defendants' sophisticated intermediary and learned intermediary defenses would not apply "because these defenses do not apply to a product like the CAEv2, which was marketed and sold both to the military and directly to the general public." *In re 3M*

*Combat Arms Earplug Prods. Liab. Litig.*, 7:20cv012, ECF No. 57 at 4 (N.D. Fla. Aug. 23, 2021) (internal citations and quotations omitted).

Additionally, Defendants' reliance on Wisconsin's sophisticated user defense is also misplaced. Under this defense, a manufacturer has no duty to warn a sophisticated user or its employees of the risks that the sophisticated user knew or should have known. *Haase v. Badger Mining Corp.*, 669 N.W.2d 737, 743 (Wis. App. 2003) (citing *Bergeld*, 319 F.3d 350, 353 (8th Cir. 2003)). The rationale for applying this defense in the employment setting is that the duty to warn the ultimate user falls on the sophisticated employer rather than the manufacturer because the employer is in a better position to warn its own employees about workplace safety matters and is in a better position to understand how the product will be used in the workplace. *Id*. at 743–44. For example, in *Haase v. Badger Mining Corp.*, a foundry worker sued a supplier for failing to warn the foundry and its employees that silica sand causes respiratory illness. *Id*. at 740. The silica sand was provided in bulk and was not dangerous until it was used in the foundry. *Id*. at 741. The foundry had extensive knowledge of the risks associated with silica sand, and these risks were well known throughout the metal working industry for many years. *Id*. at 744–45. The appellate court affirmed a directed verdict for the silica sand supplier because the foundry was a sophisticated user of silica sand, and it was "entirely reasonable for [the supplier] to expect that [the foundry] would institute necessary safety

CASE NO. 7:20cv035-MCR-GRJ

precautions based on its own specific use" of the bulk supply of silica sand. *Id*. at 745.

Unlike the risk of respiratory illness when using silica sand, the CAEv2's risks, including *imperceptible* loosening due to the dual sided nature of the plug, were not widely known throughout the hearing conservation industry for many years. Instead, the CAEv2 was the first dual ended earplug ever made, and the risks associated with the plug were almost exclusively in the possession of the Defendants. There is no documentary evidence that these risks, in particular the risk of using the CAEv2's yellow end on the gun range, were ever shared with the hearing conservation industry or the military. Additionally, the CAEv2 was provided to all deploying soldiers at a time when the military had an audiologist shortage, meaning the military could not be reasonably relied upon to provide warnings to all individual soldiers. *See* ECF No. 54-3 (emails between Elliott Berger, Marc Santoro, and Brian Myers regarding an article describing the military's shortage of audiologists); ECF No. 54-4 at 38 (explaining that "the CAE began to be issued to all deploying Soldiers in 2004"). Taken together, the military was not a sophisticated user in a better position to warn soldiers about the risks of the CAEv2.[3] *See, e.g., 3M Combat Arms*

---

[3] Defendants' argument that they acted reasonably in failing to provide warnings with the CAEv2 based on their belief that the military would handle training and instruction misses the mark. While there is evidence that the military asked Defendants not to include *instructions* in the CAEv2's bulk packaging, there is no evidence that the military instructed Defendants not to include *warnings* in the CAEv2's bulk packaging. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19md2885, 2021 WL 1131523, at *1 n.3 (N.D. Fla. Mar. 24, 2021) ("[T]he

CASE NO. 7:20cv035-MCR-GRJ

*Earplug Prods. Liab. Litig.*, No. 7:20cv98, ECF No. 83, at 6–7 (N.D. Fla. Oct. 22, 2021) (ruling that the Defendants' sophisticated user defense fails as a matter of Texas law). Instead, Defendants had superior knowledge about the risks associated with the CAEv2 and had the means to warn individual users through its packaging, unlike bulk suppliers of silica sand whose product could not be easily packaged. *See* P-GEN-1063 (packaging of the consumer version of the CAEv2). As such, the Defendants' intermediary defenses, including the sophisticated user defense, fail as a matter of law.

## II. Defendants' Superseding Cause Defense

Wilkerson moves for summary judgment on Defendants' superseding cause defense, arguing that the United States military's alleged conduct in failing to properly fit Wilkerson and train him on its use is not a superseding cause as a matter of law. ECF No. 54 at 7–8. The Court agrees.

A superseding cause is an intervening act that cuts off the defendant's liability. *Gracyalny v. Westinghouse Elec. Corp.*, 723 F.2d 1311, 1322 (7th Cir. 1983) (citing *Diener v. Heritage Mut. Ins. Co.*, 155 N.W.2d 37, 41 (Wis. 1967)). Under Wisconsin law, not all intervening acts become superseding causes because Wisconsin courts

---

Court views the adequacy of instructions and the adequacy of warnings as distinct legal concepts." (collecting cases)); MDL Dkt. No. 1725 at 9 (finding Dr. Doug Ohlin's hearsay statements admissible "to show that [Defendants] understood that Dr. Ohlin did not want Defendants to include *instructions*—as distinct from *warnings*—in the CAEv2's bulk packaging").

CASE NO. 7:20cv035-MCR-GRJ

use the substantial factor test for causation, meaning the defendant can be liable even if the defendant's conduct was not the sole cause of the plaintiff's injury. *See Merco Distrib. Corp. v. Com. Police Alarm Co., Inc.*, 267 N.W.2d 652, 655 (Wis. 1978) (citing *Hart v. State*, 249 N.W.2d 810, 822 (Wis. 1977)). Thus, an intervening act will not become a superseding cause "unless the court determines as a matter of law that there are [public] policy factors which should relieve" the defendant of liability. *Stewart v. Wulf*, 271 N.W.2d 79, 86 (Wis. 1978) (quoting *Ryan v. Cameron*, 71 N.W.2d 408, 411 (Wis. 1955)). This determination can be made before trial where, as here, "the facts are simple to ascertain and the public policy questions have been fully presented." *Kidd v. Allaway*, 807 N.W.2d 700, 704 (Wis. App. 2011) (citing *Alvarado v. Sersch*, 662 N.W.2d 350, 355 (Wis. 2003)) (upholding a trial court's public policy ruling at the motion to dismiss stage).

Wisconsin courts utilize public policy factors to cut off liability in extremely rare cases where "the conscience of the court would be shocked if the" defendant was held liable. *Merlino v. Mut. Serv. Cas. Ins. Co.*, 127 N.W.2d 741, 581 (Wis. 1964); *see also Stewart*, 271 N.W.2d at 86 ("The cases in which a casually negligent tort-feasor has been relieved of liability are infrequent and present unusual and extreme circumstances."). "[W]hether the injury is too remote from the [defendant's] negligence" is the main public policy factor in determining whether an intervening act is a superseding cause. *Faundrey ex rel. Connell v. Am. Family Mut. Ins. Co.*,

CASE NO. 7:20cv035-MCR-GRJ

680 N.W.2d 345, 348, n.1, n.12 (Wis. 2004) (explaining that the remoteness factor "revive[d] the intervening or superseding cause doctrine"); *see also Allen v. Am. Cyanamid*, 527 F. Supp. 3d 982, 986 (E.D. Wis. 2021) ("In Wisconsin, the intervening or superseding cause defense is subsumed within the first of the six 'public policy' factors . . . ."). An injury becomes too remote if an intervening act breaks the chain of causation between the injury and the defendant's original negligence. *Kidd*, 807 N.W.2d at 705 (quoting *Beacon Bowl, Inc. v. Wis. Elec. Power Co.*, 501 N.W.2d 788, 796 (Wis. 1993)). An intervening act does not break the chain of causation and cannot be a superseding cause when it creates the same risk of injury as the defendant's original negligence. *See Farr v. Evenflo Co.*, 705 N.W.2d 905, 2005 WL 1830908, at *7 (Wis. App. Aug. 5, 2005) (unpublished decision cited for persuasive value).

In *Farr*, an injured child's parents sued their child's car seat manufacturer, alleging that the car seat was defectively designed and caused the child's injury. *Id*. at *1. In response, the manufacturer argued that the father's negligence in failing to use a safety harness was the sole cause of the child's injury. *Id*. At trial, the jury apportioned fault to both the manufacturer and the father. *Id*. at *2. On appeal, the manufacturer argued that the father's negligence was a superseding cause, cutting off the manufacturer's liability. *Id*. In analyzing whether the child's injury was too remote from the manufacturer's negligence, the appellate court ruled that the father's

CASE NO. 7:20cv035-MCR-GRJ

negligence did not break the chain of causation because the father's negligence in not securing the child and the manufacturer's negligent design of the car seat both created the same risk of injury to the child. *Id*. at *7. Thus, the court explained that "it was completely appropriate to permit the jury to apportion" fault to both parties because the father's actions were not a superseding cause. *Id*.

As in *Farr*, the military's alleged actions in failing to fit and train Wilkerson and the Defendants' alleged actions in designing a defective earplug created the same risk that Wilkerson's hearing would be damaged by injurious noise. Accordingly, the military's alleged negligence could not break the chain of causation between the Defendants' alleged negligence and Wilkerson's hearing injuries, and thus the military's alleged negligence cannot be a superseding cause as a matter of law.

### III. Defendants' Failure to Mitigate Defense

Wilkerson moves for summary judgment on Defendants' failure to mitigate defense because there is insufficient evidence that Wilkerson failed to mitigate his damages. ECF No. 54 at 10. The Court agrees.

Under Wisconsin law, an injured party is under a duty to mitigate his damages. *See Lobermeier v. Gen. Tel. Co. of Wis.*, 349 N.W.2d 466, 475–76 (Wis. 1984). Thus, an injured party must use ordinary care "to seek medical or surgical treatment" and "to submit to and undergo recommended surgical or medical treatment within a

CASE NO. 7:20cv035-MCR-GRJ

reasonable time." *Id*. at 475 ("summariz[ing] Wisconsin law on mitigation of damages in tort actions"); *See* Wis. JI-Civ. 1730, Duty to Mitigate: Physical Injuries. Since the failure to mitigate damages is an affirmative defense, the party asserting the defense has the burden of proof. *Id*. (citing *Kuhlman, Inc. v. G. Heileman Brewing Co., Inc.*, 266 N.W.2d 382 (1978)). Generally, whether the injured party's actions were reasonable is a question of fact for the jury. *See id*. at 474.

Defendants first argue that Wilkerson failed to mitigate his damages by not wearing hearing aids prior to 2017, citing Wilkerson's deposition testimony and Dr. Derek Jones' and Dr. Jennifer Laborde's expert report. ECF No. 106 at 13 (citing Wilkerson Dep., ECF No. 106-7 at 367–68; Dr. Jones and Dr. Laborde Expert Report, ECF No. 106-8 at 15). At his deposition, Wilkerson testified that he was prescribed hearing aids in 2017, he regularly wears his hearing aids, and he has seen an audiologist to repair his hearing aids on multiple occasions. Wilkerson Dep., ECF No. 106-7 at 367. In their report, Dr. Jones and Dr. Laborde state that Wilkerson wears hearing aids and has good functional ability because "his tinnitus and hearing loss can be effectively treated with hearing aids." Dr. Jones and Dr. Laborde Expert Report, ECF No. 54-6 at 21. This evidence cited by Defendants does not show that Wilkerson failed "to seek medical or surgical treatment" or that Wilkerson failed "to submit to recommended surgical or medical treatment." *See Lobermeier*, 349 N.W.2d at 475. Instead, the evidence shows that Wilkerson sought medical treatment

CASE NO. 7:20cv035-MCR-GRJ

for his hearing loss, followed the recommended treatment by wearing hearing aids, and made sure his hearing aids continued to work properly. Defendants do not provide evidence that Wilkerson was ever prescribed hearing aids prior to 2017, nor do Defendants' experts opine that Wilkerson should have worn hearing aids prior to 2017. As such, there is insufficient evidence for a reasonable jury to conclude that Wilkerson failed to mitigate his damages by failing to wear hearing aids prior to 2017.

Next, Defendants argue that Wilkerson failed to mitigate his damages by not attending cognitive behavioral therapy. ECF No. 106 at 13. Defendants only support for this argument is one line in Dr. Jones' and Dr. Laborde's expert report which states, "[s]hould Mr. Wilkerson's tinnitus rise to the level that he feels more handicapped, cognitive behavioral therapy and/or counseling has been shown to be effective in tinnitus management . . . ." Dr. Jones and Dr. Laborde Expert Report, ECF No. 54-6 at 19. First and foremost, Defendants' experts do not even believe Wilkerson needs this treatment with his current symptoms nor do they provide evidence that it would definitively decrease Wilkerson's future damages. Moreover, there is no evidence that Wilkerson's own physicians recommended cognitive behavioral therapy as a treatment for Wilkerson's tinnitus. As such, there is insufficient evidence for a reasonable jury to conclude that Wilkerson failed to mitigate his damages by not attending cognitive behavioral therapy.

CASE NO. 7:20cv035-MCR-GRJ

Lastly, Defendants argue that Wilkerson failed to mitigate his damages by not decreasing his caffeine consumption, citing Wilkerson's deposition testimony and Dr. Douglas Jacob's expert report. ECF No. 106 at 13–14. According to his deposition, Wilkerson sought medical treatment for sleep loss, and his physician recommended a decrease in caffeine consumption at night. ECF No. 54-6 at 376, 379. Since his doctor's recommendation Wilkerson has only partially decreased his caffeine consumption at night. ECF No. 54-6 at 379. In his report, Dr. Jacobs suggests that Wilkerson's sleep loss could be caused by Wilkerson's continued caffeine consumption rather than hearing loss or tinnitus. Dr. Jacobs Expert Report, ECF No. 54-6 at 3. This evidence may be relevant to show that Wilkerson's sleep issues are not caused by his hearing loss or tinnitus, but this evidence is not relevant to show that Wilkerson failed to mitigate his damages associated with hearing loss and tinnitus. Defendants do not cite to any evidence showing that Wilkerson received medical advice that his hearing loss or tinnitus would improve if his caffeine consumption decreased, and Dr. Jacobs similarly does not provide an opinion that decreasing caffeine consumption could treat Wilkerson's hearing loss or tinnitus. Therefore, there is insufficient evidence for a reasonable jury to conclude that Wilkerson failed to mitigate his damages by not decreasing his caffeine consumption.

## IV.  Defendants' Statute of Limitations Defense

Wilkerson moves for summary judgment on Defendants' statute of limitations defense regarding Wilkerson's personal injury and fraud claims, arguing that these claims are timely as a matter of law because he could not have discovered the cause of his injuries until 2018. ECF No. 54 at 11.  Under Wisconsin law, Wilkerson's personal injury and fraud claims are subject to a three year statute of limitations. Wis. Stat. § 893.54(1m)(a) (stating the statute of limitations for personal injury claims); Wis. Stat. § 893.93(1m)(b) (stating the statute of limitations for fraud claims). Wilkerson filed his claims on January 17, 2020. ECF No. 1. Thus, his claims are timely if they accrued on or before January 17, 2017.

Wisconsin courts apply the discovery rule as the general accrual rule for all tort and fraud claims. *See* Wis. Stat. § 893.93 (1m)(b) (codifying the discovery for fraud claims); *Hansen v. A.H. Robins Co., Inc.*, 335 N.W.2d 578, 583 (Wis. 1983) ("[W]e adopt the discovery rule for all tort actions . . . ."). Under Wisconsin's discovery rule, a tort claim accrues when "the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only the fact of injury but also that the injury was probably caused by the defendant's conduct or product," *Borello v. U.S. Oil Co.*, 388 N.W.2d 140, 146 (Wis. 1986), and a fraud claim accrues when the plaintiff discovers "the facts constituting the fraud." Wis. Stat. § 893.93 (1m)(b). Statute of limitations defenses under the discovery rule require fact intensive

CASE NO. 7:20cv035-MCR-GRJ

inquiries, normally presenting issues of fact. *See Gumz v. N. States Power Co.*, 742 N.W.2d 271, 280 (Wis. 2007) ("Statute of limitations defenses based on failure to exercise reasonable diligence will often present questions of fact . . . ."). Thus, determining the timeliness of Wilkerson's claims is more appropriately considered once the relevant facts have been presented at trial. Accordingly, the Court defers ruling on Defendants' statute of limitations defense to trial.

### V.     Defendants' Open and Obvious Danger Defense

Wilkerson argues that Defendants' open and obvious danger defense fails as a matter of law because the danger associated with the CAEv2 is not open and obvious as a matter of law. The open and obvious danger doctrine is relevant to whether Wilkerson was contributorily negligent, *see Wagner v. Wis. Mun. Mut. Ins. Co.*, 601 N.W.2d 856, 859 (Wis. App. 1999), whether Defendants had a duty to warn Wilkerson of the dangers associated with the CAEv2, *see Pagel v. Marcus Corp.*, 756 N.W.2d 447, 452 (Wis. App. 2008), and whether the CAEv2's defects made the earplugs unreasonably dangerous. *See Tanner v. Shoupe*, 596 N.W.2d 805, 812 (Wis. App. 1999). The Court agrees with Wilkerson that this defense is inapplicable as a matter of law in all three contexts.

The open and obvious danger defense is relevant to whether a plaintiff is contributorily negligent as a matter of law. *See Wagner*, 601 N.W.2d at 859. "[W]here a plaintiff voluntarily confronts an open and obvious danger, his

CASE NO. 7:20cv035-MCR-GRJ

negligence, as a matter of law, exceeds any negligence attributable to the defendant," barring "the plaintiff's recovery under the contributory negligence statute." *Kloes v. Eau Claire Cavalier Baseball Ass'n, Inc.*, 487 N.W.2d 77, 81 (Wis. App. 1992) (citing *Wisnicky v. Fox Hills Inn & Country Club*, 473 N.W.2d 523, 524 (Wis. App. 1991)). Because apportioning fault under the contributory negligence statute is usually a question of fact for the jury, *see id.* (citing *Schuh v. Fox River Tractor Co.*, 218 N.W.2d 279, 287 (Wis. 1974), the open and obvious danger defense should only bar plaintiff's recovery as a matter of law in the rare cases where it is undisputed that "there is a high degree of probability that the condition or danger will result in harm," *see id.* (citing *Scheeler v. Bahr*, 164 N.W.2d 310, 313 (Wis. 1969)), and that "no reasonable jury could reach a conclusion to the contrary." *Hansen v. Holland N. Am.*, 574 N.W.2d 250, 255 (Wis. App. 1997) (citation omitted). For example, this defense barred a plaintiff's recovery when the plaintiff dove headfirst into water with an unknown depth, *see Scheeler,* 164 N.W.2d at 313, and when a plaintiff carelessly misused a loaded gun. *See Schilling v. Blount Inc.*, 449 N.W.2d 56, 60–61 (Wis. App. 1989).

Here, Defendants argue that Wilkerson confronted an open obvious risk of hearing injury by re-inserting his CAEv2 on the gun range after the CAEv2 had fallen out of his ear on multiple occasions. ECF No. 122 at 6–7. Defendants' argument misses the mark. Re-inserting an earplug is not similar to diving headfirst

CASE NO. 7:20cv035-MCR-GRJ

into shallow water or carelessly misusing a loaded gun. The CAEv2 is a hearing protection device. When a soldier like Wilkerson inserts the earplug, he should reasonably expect the CAEv2 to protect him from injurious noise even if it has fallen out on prior occasions, especially considering the undisputed fact that all earplugs loosen. Thus, it would be nonsensical to find Wilkerson more negligent than Defendants as a matter of law when Defendants designed and sold the allegedly defective earplug in the first place. Also, there is zero evidence that Wilkerson knew of the risk of using the CAEv2's yellow end on the gun range, which is an entirely separate risk from the CAEv2's alleged loosening issues. Accordingly, the open and obvious danger defense does not completely bar Wilkerson's claims as a matter of law, and the jury will resolve whether Wilkerson should be apportioned fault for his injuries.

The open and obvious danger defense is also relevant to whether a manufacturer has a duty to warn users about the dangers associated with the manufacturer's product. *See* Wis. Stat. § 895.047(3)(d) (codifying the open and obvious danger doctrine as a defense for strict liability failure to warn claims); *Pagel*, 756 N.W.2d at 451–53 (Wis. App. 2008) (explaining that the open and obvious danger doctrine is a defense to negligent failure to warn claims). In general, a manufacturer has a duty to warn users of dangers that the manufacturer knew or reasonably should have known about. *See Strasser v. Transtech Mobile Fleet Serv.*,

CASE NO. 7:20cv035-MCR-GRJ

*Inc.*, 613 N.W.2d 142, 154 (quoting Wis. JI – Civil 3242, Negligence: Duty of Manufacturer to Warn) (explaining that Wisconsin courts have adopted Restatement (Second) of Torts § 388 for negligent failure to warn claims). However, a manufacturer does not have a duty to warn users of open and obvious dangers inherent in the product that the user either knows or should have known **of** based on a "casual inspection" of the product. *Pagel*, 756 N.W.2d at 452–54 (ruling that a manufacturer of a water park attraction had no duty to warn users of the risk of falling off the attraction because a casual inspection would have uncovered that the attraction was built to throw users off the attraction and into the water); *see also* Restatement (Second) of Torts § 388, comment k. For example, this defense has been available to a manufacturer of a hot water dispenser because the manufacturer should not have to warn users of the risk of getting burned when a casual inspection would have uncovered steam coming from the water and the inherent danger of getting burned. *See Kessel ex rel. Swenson v. Stansfield Vending, Inc.*, 714 N.W. 206, 216 (Wis. App. 2006).

The CAEv2 is completely distinguishable from a hot water dispenser. A hot water dispenser is designed with a certain amount of risk to accomplish the intended purpose of the product; hot water inherently involves a risk of getting burned. In contrast, the CAEv2 is a hearing protection device designed to protect users from hearing injuries and was in no way designed to create hearing injuries. Thus, soldiers

CASE NO. 7:20cv035-MCR-GRJ

like Wilkerson should be able to insert the CAEv2 and assume that it protects from injurious levels of noise. Moreover, a "casual inspection" of the CAEv2 would tell soldiers nothing about the CAEv2's alleged fitting issues nor would it tell soldiers not to use the CAEv2's yellow end on a gun range. *See Pagel*, 756 N.W.2d at 453. Therefore, no reasonable jury could conclude that the alleged dangers associated with the CAEv2 were open and obvious. As such, Defendants had a duty to warn Wilkerson of these alleged dangers associated with the CAEv2, and the open and obvious danger defense does not bar Wilkerson's strict liability failure to warn claim as a matter of law.

Lastly, the open and obvious danger defense is relevant to whether a manufacturer can be held strictly liable for design defects. *See Tanner*, 596 N.W.2d at 812 (citing *Kozlowski v. John E. Smith's Sons Co.*, 275 N.W.2d 915, 920 (Wis. 1979)). To be held strictly liable for a design defect, "the defect must be hidden from the ordinary consumer, that is, not an open and obvious defect." *Id*. (citing *Kozlowski*, 275 N.W.2d at 920). The Wisconsin Supreme Court has explained that the open and obvious danger defense has been applied in the design defect context "when a knife cuts flesh, when an alcoholic beverage leads to intoxication, or when the flame on a gas stove burns the chef." *Godoy ex rel. Gramling v. E.I. du Pont de Nemours and Co.*, 768 N.W.2d 674, 685 (Wis. 2009) (citing *Dippel v. Sciano*, 155 N.W.2d 55 (Wis. 1967)). Generally, whether a defect "is an open and obvious danger

CASE NO. 7:20cv035-MCR-GRJ

Case 7:20-cv-00035-MCR-GRJ   Document 133   Filed 03/08/22   Page 19 of 20

Page 19 of 20

is a question of fact for the jury to determine," *Tanner*, 596 N.W.2d at 812 (citing *Hansen v. New Holland N. Am., Inc.*, 574 N.W.2d 250, 254 (Wis. App. 1997). However, a court may rule on this issue as a matter of law if there is insufficient evidence to create a genuine issue of fact as to whether the defect was open and obvious to the ordinary consumer. *See Stupak v. Hoffman-La Roche, Inc.*, 326 Fed. App'x 553, 560 (11th Cir. 2009) (applying Wisconsin law and affirming summary judgment because the pharmaceutical manufacturer did not provide sufficient evidence to create a genuine issue of fact as to whether an ordinary consumer would have known of the drug's alleged defects).

Here, Defendants argue that a reasonable jury could find that the CAEv2's alleged design defects were open and obvious to the ordinary consumer, barring Wilkerson's strict liability design defect claim. ECF No. 122 at 6. In support of this argument, Defendants point out that "the length of the plug, the stiffness of the stem, whether a deep fit would be obtained, and whether the opposing flange contacted the tragus are all observable features of the CAEv2." *Id*. This argument also misses the mark because the CAEv2 is inherently distinguishable from the products that this defense has applied to in the past. For example, the purpose of a gas stove is to create a flame that inevitably creates a risk of getting burned. The stove's flame cannot be an actionable defect because the flame creates an open and obvious danger that an ordinary consumer should expect when using the stove. Again, the CAEv2 is a

CASE NO. 7:20cv035-MCR-GRJ

hearing protection device in which the ordinary consumer assumes the product protects hearing rather than creates hearing injuries. Moreover, highly trained experts with years of experience in the hearing conservation industry observe the CAEv2's physical characteristics and come to different conclusions as to whether the CAEv2 is defective. *See, e.g.*, Richard McKinley Expert Report, MDL Dkt. ECF No. 1630-18; Dr. John Casali Expert Report, MDL Dkt. ECF No. 1595-3. Thus, a reasonable jury could not conclude that the CAEv2's defects were open and obvious to the ordinary consumer, and the open and obvious danger defense does not bar Wilkerson's strict liability design defect claim as a matter of law.

Accordingly, Wilkerson's Motions for Summary Judgment, ECF Nos. 54 & 96, are **GRANTED** as to Defendants' intermediary defenses, superseding cause defense, failure to mitigate defense, and open and obvious danger defense and **DENIED** as to Defendants' statute of limitations defense.

**DONE AND ORDERED** this 8th day of March 2022.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

CASE NO. 7:20cv035-MCR-GRJ