UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *Wilkerson*, 7:20-cv-035 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

# ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment under Federal Rule of Civil Procedure 56. ECF No. 63. Having now fully considered the parties' arguments and applicable Wisconsin law, the Court concludes that Defendants' motion is due to be **GRANTED in part** and **DENIED in part**.

Summary judgment is appropriate where there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden of demonstrating the absence of a genuine dispute of material fact rests with the moving party. *Celotex*, 477 U.S. at 323. In determining whether the moving party has carried its burden, a court must view the evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party. *Liberty Lobby*, 477 U.S. at 255; *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997).

The Court assumes the parties' familiarity with the general factual allegations and nature of this multidistrict litigation. Wilkerson has brought fifteen claims against Defendants under Wisconsin law[1] arising from injuries he alleges were caused by his use of the Combat Arms Earplug version 2 ("CAEv2") during his military service. *See* Master Form Compl., ECF No. 1.[2] Defendants move for summary judgment on all of Wilkerson's claims on grounds that he should be judicially estopped from bringing his claims for failing to list them in bankruptcy and that he otherwise lacks standing to bring this suit. ECF No. 63 at 2–12. Defendants also move for summary judgment on Wilkerson's claims for express and

---

[1] The parties agree Wisconsin law applies to Wilkerson's claims. *See* ECF No. 48.

[2] Specifically, Wilkerson raises claims for Design Defect – Negligence (Count I), Design Defect – Strict Liability (Count II), Failure to Warn – Negligence (Count III), Failure to Warn – Strict Liability (Count IV), Breach of Express Warranty (Count V), Breach of Implied Warranty (Count VI), Negligent Misrepresentation (Count VII), Fraudulent Misrepresentation (Count VIII), Fraudulent Concealment (Count IX), Fraud and Deceit (Count X), Gross Negligence (Count XI), Negligence *Per Se* (Count XII), Consumer Fraud and/or Unfair Trade (Count XIII), Unjust Enrichment (Count XV), and Punitive Damages (Count XVI). ECF No. 1 at 4.

implied warranty (Counts V and VI), negligent misrepresentation (Count VII), fraudulent misrepresentation (Count VIII), fraudulent concealment (Count IX), fraud and deceit (Count X), gross negligence (Count XI), consumer protection/unfair trade practices (Count XIII), unjust enrichment (Count XV), and punitive damages (Count XVI). ECF No. 63. In response, Wilkerson withdraws his claims for express and implied warranties (Counts V and VI), gross negligence (Count XI), consumer protection/unfair trade practices (Count XIII), unjust enrichment (Count XV), and punitive damages (Count XVI).[3] ECF No. 104.

## I.     Judicial Estoppel

Defendants argue that judicial estoppel applies because Wilkerson failed to amend his Chapter 13 bankruptcy schedules to include his claims against Defendants. ECF No. 63 at 2–9. The Court disagrees.

"Because this is a diversity case, the application of the doctrine of judicial estoppel is governed by state law." *Original Appalachian Artworks, Inc. v. S. Diamond Assocs., Inc.*, 44 F.3d 925, 930 (11th Cir. 1995) (citations omitted). Under Wisconsin law, judicial estoppel is an equitable doctrine "aimed at preventing a party from manipulating the judiciary as an institution by asserting a position in a

---

[3] Wilkerson withdraws his gross negligence and punitive damages claims because these claims are not independent claims under Wisconsin law. *See* ECF No. 104 at 23–24. However, Wilkerson still intends to pursue punitive damages as a remedy based on Defendants' alleged conduct. *Id.* (citing *Wangen v. Ford Motor Co.*, 294 N.W.2d 437, 442 (Wis. 1980) (explaining that gross negligence is an appropriate standard to assess whether punitive damages are available)).

legal proceeding and then taking an inconsistent position" in another legal proceeding. *State v. Miller*, 683 N.W.2d 485, 496 (Wis. App. 2004) (citing *Salveson v. Douglas Cnty.*, 630 N.W.2d 182, 193 (Wis. 2001)). In order for judicial estoppel to apply: "(1) the latter position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position." *State v. Ryan*, 809 N.W.2d 37, 43 (Wis. 2012) (citing *State v. Petty*, 548 N.W.2d 817, 820 (Wis. 1996)). Another "fundamental requirement" of judicial estoppel is that the party must take the inconsistent position intentionally to manipulate the judiciary. *Wagner v. Allstate Prop. and Cas. Ins. Co.*, 930 N.W.2d 277, 2019 WL 2034886 at *3 (Wis. App. 2019) (citing *Petty*, 548 N.W.2d at 820 ("Because the rule looks toward cold manipulation and not unthinking or confused blunder, it has never been applied where plaintiff's assertions were based on . . . mistake")). Determining whether the requirements have been met is a question of law. *Petty*, 548 N.W.2d at 820 (citing *Harrison v. LIRC*, 523 N.W.2d 138 (Wis. App. 1994)). Once the requirements have been met, "it is within the discretion of the trial court whether to invoke the doctrine." *Olson v. Darlington Mut. Ins. Co.*, 723 N.W.2d 713, 716 (Wis. App. 2006) (citing *Salveson*, 630 N.W.2d at 194).

The Wisconsin Court of Appeal's decision in *Wagner* provides an instructive example of how to analyze these requirements in the bankruptcy context. *See*

*Wagner*, 2019 WL 2034886 at \*\*3–6. In that case, the plaintiff sustained severe injuries in a car accident caused by another driver. *Id*. at \*1. After the car accident but before filing a lawsuit, the plaintiff filed a Chapter 7 bankruptcy petition but failed to disclose the potential lawsuit as an asset. *Id*. The bankruptcy court granted a discharge of the plaintiff's debts even though the trustee had very limited knowledge of the personal injury cause of action. *See id*. at \*2. Thereafter, the plaintiff filed the personal injury lawsuit against the driver's insurance company seeking $100,000 in compensation. *Id*. The trial court granted the insurance company's motion for summary judgment on the basis of judicial estoppel because the plaintiff failed to disclose the potential cause of action as an asset in the bankruptcy proceeding. *Id*. On appeal, the Wisconsin Court of Appeals reversed because there was insufficient evidence to rule as a matter of law that the plaintiff intentionally failed to disclose the personal injury claim to manipulate the bankruptcy court. *See id*. at \*5. The court reasoned that even though the first three requirements of judicial estoppel were clearly met, the doctrine still did not apply as a matter of law because the "record [was] devoid of information about why" the plaintiff failed to disclose the claim. *See id.* Absent this critical evidence the court could not determine whether the plaintiff's actions were a "cold manipulation" or a "confused blunder," rendering summary judgment for the insurance company inappropriate. *See id*. at \*\*4–5 (quoting *Petty*, 548 N.W.2d at 820).

Here, Defendants have presented evidence that Wilkerson failed to amend his bankruptcy schedules to add his claims against Defendants as an asset prior to filing suit; the schedules were amended only after Defendants filed their summary judgment motion. ECF No. 63 at 2; *see* Initial Bankruptcy Schedule, ECF No. 63-1 (not listing Wilkerson's claims against Defendant on initial bankruptcy schedules, which were filed on February 27, 2018); Amended Bankruptcy Schedule, ECF No. 104-4 (listing Wilkerson's claims against Defendant as an asset on amended bankruptcy schedules, which were filed on February 16, 2022). The record, however, is "devoid of information about why" Wilkerson omitted these claims from his bankruptcy schedules. Defendants argue that Wilkerson's omission was not a mistake because Wilkerson was in contact with his bankruptcy attorney after Wilkerson filed his claims against Defendants. ECF No. 63 at 7 (citing Wilkerson Dep., ECF No. 63-3, at 402, 428–29). The Court rejects this argument because there is no evidence that Wilkerson knew about his duty to amend his bankruptcy schedules when he contacted his attorney about a completely unrelated matter, *see* Wilkerson Dep., ECF No. 63-3 at 428–29 (testifying that he spoke with his bankruptcy attorney about lowering his monthly payment), and it is entirely reasonable to assume that Wilkerson, a high school graduate with limited knowledge regarding the bankruptcy process, did not know about the need to disclose this subsequent litigation to his bankruptcy attorney or the bankruptcy court, especially

CASE NO. 7:20cv035-MCR-GRJ

since Wilkerson's claims against Defendants involve uncertain unliquidated damages. Furthermore, and importantly, Defendants do not present any evidence that Wilkerson had a motive to conceal his claims because Wilkerson filed a Chapter 13 bankruptcy plan requiring his creditors to be fully repaid by April 2023, meaning the concealment of his claims against Defendants would have little, if any, effect on his bankruptcy plan because his creditors will be repaid regardless of the outcome of this litigation. Because Defendants have presented no evidence that Wilkerson intentionally concealed his claims as a "cold manipulation" of the bankruptcy court, they have not satisfied the requirements for judicial estoppel under Wisconsin law. *See Petty*, 548 N.W.2d at 820.

## II.   Standing

Notwithstanding their argument on judicial estoppel, Defendants argue that Wilkerson's claims are the property of the bankruptcy estate and that the bankruptcy trustee is the only party with standing to pursue Wilkerson's claims against Defendants. ECF No. 63 at 10–11. The Court disagrees and concludes that Wilkerson has standing to pursue his claims on behalf of the bankruptcy estate.

Legal claims filed after a Chapter 13 bankruptcy petition are included in the bankruptcy estate as long as the bankruptcy case has not been "closed, dismissed, or converted to a case under Chapter 7." *See* 11 U.S.C. §§ 541(a), 1306; *see also In re Waldron*, 536 F.3d 1239, 1241–42 (11th Cir. 2008). The trustee has the power to

use, sell, or lease property of the estate. 11 U.S.C. § 363. Under a Chapter 13 bankruptcy case, "the debtor shall have . . . the rights and powers of the trustee," 11 U.S.C. § 1303, including the right to sue on behalf of the estate. Fed. R. Bank. P. 6009 ("With or without court approval, the trustee or debtor in possession may . . . prosecute any action or proceeding on behalf of the estate before any tribunal."); *see Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1331 n.2 (11th Cir. 2004) ("Because [Plaintiff] filed under Chapter 13 of the Bankruptcy Code, he retains standing to pursue legal claims on behalf of the estate.") (citations omitted); *In re McConnell*, 390 B.R. 170, 177 (W.D. Pa. 2008) ("The only way to 'use' a cause of action is to bring suit upon it or settle it. Therefore, it follows that a Chapter 13 debtor has standing to prosecute . . . causes of action that constitute property of the estate.").

Wilkerson filed a Chapter 13 bankruptcy petition on February 27, 2018. ECF No. 63-1. Wilkerson's Chapter 13 bankruptcy plan, which was confirmed on May 11, 2018, allows Wilkerson to make monthly payments over an extended period of time to resolve his debts. ECF No. 63-10. Wilkerson's bankruptcy case will remain open until his final payments are made, which is scheduled for April 2023. ECF No. 104 at 5 (citing Wilkerson's revised payment schedule). On January 17, 2020, Wilkerson filed his claims against Defendants. ECF No. 1. Since Wilkerson filed a Chapter 13 petition and the bankruptcy case is still ongoing, Wilkerson's claims

against Defendants are property of the bankruptcy estate. Thus, Wilkerson, as a Chapter 13 debtor, has standing to sue on behalf of the bankruptcy estate.

Defendants argue that Wilkerson's specific bankruptcy plan forecloses his right to sue because the plan declares that "[a]ll property shall remain property of the estate and shall vest in the Debtor only upon entry of discharge." ECF No. 63 at 10 (citing Wilkerson's Chapter 13 Bankruptcy Plan, ECF No. 63-10 at 1). Defendants believe this provision means that only the trustee has the power to sue Defendants because Wilkerson's claims against them remain property of the estate and do not vest in Wilkerson until discharge of his debts. *Id*. This argument is misplaced in the Chapter 13 bankruptcy context where the debtor has the same rights as the trustee to control estate property and sue on behalf of the estate. *See Crosby*, 394 F.3d at n.2. The language in Wilkerson's bankruptcy plan only "means that all of the legal and equitable interests of the debtor remain property of the bankruptcy estate (as opposed to merely property of the debtor) until his bankruptcy case has been administered," and in no way forecloses Wilkerson's right to sue on behalf of the estate as Chapter 13 debtor. *See In re McConnell*, 390 B.R. at 177 (ruling that a nearly identical Chapter 13 bankruptcy plan provision did not change the debtor's right to sue on behalf of the estate). Defendants' arguments completely ignore the nature of Wilkerson's bankruptcy. Accordingly, Wilkerson has standing to sue Defendants on behalf of his estate.

### III. Misrepresentation Claims

Defendants also move for summary judgment on Wilkerson's claims for negligent and fraudulent misrepresentation, arguing that these claims fail as a matter of law because Wilkerson never relied on statements made by Defendants. ECF No. 63 at 19. The Court disagrees.

Under Wisconsin law, "[a]ll misrepresentation claims" require that the "plaintiff must have believed and relied on the misrepresentation to his detriment or damage." *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 239 (Wis. 2004) (citing *Ollerman v. O'Rourke Co., Inc.*, 288 N.W.2d 95, 100 (Wis. 1980)). Wisconsin courts allow plaintiffs to recover for damages resulting from misrepresentations made to third parties on which the plaintiff reasonably and foreseeably relied. *See, e.g. Pagoudis v. Keidl*, 963 N.W.2d 803, 812 (Wis. App. 2021) (citing Restatement (Second) of Torts § 533 Am. L. Inst. (1977)) (explaining that "a seller may be liable to a third party for indirect misrepresentations"); *see also Forst v. SmithKline Beecham Corp.*, 602 F. Supp. 2d 960, 971 (E.D. Wis. 2009) (citing *State v. Timblin*, 657 N.W.2d 89, 97 (Wis. App. 2002)) (denying a drug manufacturer's motion for summary judgment on a patient's misrepresentation claims because it was "wholly foreseeable" that a patient will rely on information that the drug manufacturer provided to the patient's doctor). Generally, reliance presents a question of fact for the jury. *See, e.g., Henning v. Ahearn*, 601 N.W.2d

...

14, 24 (Wis. App. 1999) (citing *Williams v. Rank & Son Buick, Inc.*, 170 N.W.2d 807, 810–11 (Wis. 1969)).

Here, Wilkerson has presented a sufficient evidentiary basis for a reasonable jury to conclude that Defendants made affirmative misrepresentations to the United States military regarding the CAEv2, *see* ECF No. 104-7 (brochure stating that the CAEv2 "fits most ear canals" and is "protective up to approximately 190 dBP for outdoor exposures (sufficient to cover most of the weapons in the military inventory, including shoulder-fired rockets)"); ECF No. 104-8 (marketing material explaining that the CAEv2's "patented Hear-Through design allows wearers to hear low-level sounds critical to mission safety" and "reacts to provide instant protection from high-level noises"), and that Wilkerson reasonably and foreseeably relied on the Defendants' misrepresentations in choosing to use the CAEv2 during his military service. Wilkerson Dep., ECF No. 104-3 at 364 (testifying that he relied on the military's representation that the CAEv2 "were good earplugs that would protect [his] hearing"); Wilkerson Responses to Interrogatories, ECF No. 104-6 at 31–32 (stating that he believed the green end protected him from constant noise and that the yellow end protected him during patrols where there was not constant noise). Additionally, when the facts are viewed in the light most favorable to Wilkerson, there is a sufficient evidentiary basis for a reasonable jury to conclude that Defendants made affirmative misrepresentations directly to Wilkerson. *See*

Wilkerson Depo. ECF No. 104-3 at 259–62, 272–74 (testifying that a civilian at Fort McCoy made misrepresentations to Wilkerson and other soldiers about the CAEv2's effectiveness and proper use). This is especially true considering the evidence that Defendants' sale managers visited military bases and trained military members on the CAEv2. *See Blum* Trial Tr. 10/18/21 at 127–128 (Tim McNamara testifying that he has visited many U.S. military bases and has trained military members on the CAEv2 during those visits). Accordingly, Wilkerson's misrepresentation claims do not fail as a matter of law.

## IV. Fraudulent Concealment Claim

Defendants also move for summary judgment on Wilkerson's fraudulent concealment claim, arguing they had no duty to disclose problems with the CAEv2 because Wilkerson was never involved in a business transaction with Defendants. ECF No. 63 at 22. The Court disagrees.

Under Wisconsin law, fraudulent concealment is an actionable intentional misrepresentation when there is a duty to disclose. *See Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 238 (Wis. 2004) ("It is well-established that a nondisclosure is not actionable as a misrepresentation tort unless there is a duty to disclose."); *Ollerman v. O'Rourke Co., Inc.*, 288 N.W.2d 95, 99–100 (Wis. 1980) ("If there is a duty to disclose a fact, failure to disclose that fact is treated in the law as equivalent to a misrepresentation of the nonexistence of the fact."). "The existence

and scope of a duty to disclose are questions of law for the court." *Tietsworth*, 677 N.W.2d at 239 (citing *Ollerman*, 288 N.W.2d at 100). The Wisconsin Supreme Court has explained that a duty to disclose arises where (1) the defendant "actively conceals a defect" or prevents an investigation, (2) the defendant has made partial ambiguous statements that "create a false impression," (3) "a fiduciary relationship between the parties" exists, or (4) "the facts are peculiarly and exclusively within the knowledge" of the defendant and "the other party is not in a position to discover the facts for himself." *Ollerman*, 288 N.W.2d at 102 (citations omitted).

Contrary to Defendants' assertions, the Wisconsin Supreme Court in *Ollerman* never stated that a duty to disclose can only arise between parties in a business transaction. *See id.* Instead, the Court explained that the modern trend has been to construe the duty to disclose requirement more broadly, especially when holding otherwise would create an "injustice." *See id.* (recognizing a shift in modern jurisprudence that has "departed from or relaxed the 'no duty to disclose' rule by carving out exceptions to the rule and by refusing to adhere to the rule when it works an injustice"). Furthermore, the Defendants have not cited, and the Court has not found, a Wisconsin case ruling that a duty to disclose can only arise between parties to a business transaction. Therefore, the Court, sitting in diversity, will not recognize such a limitation.

Here, the CAEv2 is allegedly defective, in part, because it *imperceptibly* loosens in the user's ear. Nothing about the CAEv2 put soldiers like Wilkerson on notice of the possibility that the earplug was defective. However, the information regarding the CAEv2's alleged issues were well documented in Defendants' internal documents. *See, e.g.*, ECF 54-9 (memo detailing the fitting issues associated with the CAEv2). Thus, the facts associated with the CAEv2's alleged defects were "peculiarly and exclusively within the knowledge" of Defendants, while soldiers like Wilkerson were "not in a position to discover" those defects given their nature. *See Ollerman*, 288 N.W.2d at 102. Accordingly, Defendants had a duty to disclose information regarding the CAEv2's alleged defects to soldiers like Wilkerson,[4] and Wilkerson's fraudulent concealment claim does not fail as a matter of law.

### V.  Fraud and Deceit Claim

Last, Defendants move for summary judgment on Wilkerson's fraud and deceit claim, arguing that Wisconsin law no longer recognizes a fraud and deceit claim distinct from a fraudulent misrepresentation claim. ECF No. 63 at 18. Wilkerson failed to respond to this argument, *see* ECF No. 104, and has not listed this claim in his pre-trial stipulation. ECF No. 94 (listing Wilkerson's claims against

---

[4] The Court acknowledges that the Wisconsin Supreme Court in *Tietsworth* declined to rule on whether *Ollerman* applies to all consumer transactions. *See Tietsworth*, 677 N.W.2d at 239. This Court's ruling does not answer this open question either. Instead, the Court's ruling simply applies a well-recognized basis for a duty to disclose under Wisconsin law. *See Ollerman*, 288 N.W.2d at 102.

CASE NO. 7:20cv035-MCR-GRJ

Defendants and omitting a claim for fraud and deceit). Accordingly, the Court finds that Wilkerson has abandoned this claim.

Accordingly, Defendants' Motion for Summary Judgment, ECF No. 63, is **GRANTED** as to Wilkerson's claim for fraud and deceit and **DENIED** as to Defendants' standing and judicial estoppel arguments and as to Wilkerson's claims for negligent misrepresentation, fraudulent misrepresentation, and fraudulent concealment.

**DONE AND ORDERED** this 12th day of March 2022.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

CASE NO. 7:20cv035-MCR-GRJ